IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHNNY LEE LEONARD,                )
                                   )
                Petitioner,        )
                                   )
           v.                      )    1:10CV443
                                   )
DARLIN WHITE,                      )
                                   )
                Respondent.        )

**ORDER, MEMORANDUM OPINION, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On November 6, 2006, in the Superior Court of Guilford County, Petitioner pled guilty to first-degree kidnapping, assault by strangulation, two counts of violating a domestic protective order, assault with a deadly weapon inflicting serious injury, and interfering with an emergency communication in cases 05 CRS 95434-35, -95860-62, and -96577. (Docket Entry 6, Ex. 1.) Through consolidation of the charges, he received two consecutive sentences of 73-97 months and 25-39 months imprisonment. (Id. Ex. 2.) Petitioner did not file a direct appeal. However, on October 2, 2007, he did file a motion for appropriate relief in the trial court. (Id. Ex. 5.) That motion was denied on December 3, 2007, but Petitioner did not file a petition for certiorari with the North Carolina Court of Appeals. (Id. Ex. 7.) After allowing more than two years to pass, Petitioner instead filed a second motion for appropriate relief. (Id. Ex. 8.) This motion, filed on July 13, 2009, was denied by an order filed on August 7, 2009. (Id. Ex.

9.)  Petitioner did seek certiorari as to the second motion for appropriate relief, but the North Carolina Court of Appeals denied that petition for certiorari on February 10, 2010.  (Id. Ex. 12.)  Petitioner then dated his Petition in the instant case as signed and mailed on May 20, 2010.  (Docket Entry 1 at 15.)  It was received by the United States District Court for the Eastern District of North Carolina, but was transferred to this Court after it was determined that it should have been brought in this District.  (Docket Entry 6, Ex. 13.)

Respondent has filed a Motion to Dismiss, seeking to have the Petition dismissed as untimely filed.  (Docket Entry 5.)  In addition, Petitioner moved for appointment of counsel almost a month after he had already responded to the Motion to Dismiss. (Docket Entry 9.)  Because the Motion to Dismiss is dispositive of the case, the Court will consider it first.

## **Petitioner's Claims**

Petitioner advances two potential grounds for relief in his Petition.  The first of these claims that he "took a[n] involuntary plea due to bad advise [sic] from counsel while he was on a[n] Anti-psychotic drug."  (Docket Entry 2 at 6.)  He supports this claim by stating that he was incompetent at the time of his plea, that he was taking Thorazine and Valium, and that counsel failed "to pursue extreme emotional disturbance" as a defense.  (Id.) Petitioner's second claim alleges that "[a]ll the elements for first degree kidnapping were not proved by the facts in this case." (Id. at 7.)  Petitioner recites what he says are the elements of

kidnapping in North Carolina and states in conclusory fashion that "the facts will show these elements were not met." (Id.)

**Discussion**

Respondent argues that the Petition was filed[1] beyond the one-year statute of limitation established by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

-3-

>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the state court entered Petitioner's judgment on November 6, 2006. His time to file any possible appeal would have expired 14 days later. See N.C.R. App. P. 4(a) (fourteen days to serve notice of appeal). Petitioner did not file an appeal. Therefore, his year to file his federal habeas petition then began to run, at the latest on November 20, 2006, and continued to run for 316 days until Petitioner filed his first motion for appropriate relief on October 2, 2007. At that point, Petitioner had just 49 days left out of his year to file under § 2241(d)(1)(A).

The filing of Petitioner's first motion for appropriate relief tolled the operation of the statute of limitation for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner's first motion for appropriate relief was denied on December 5, 2007. He could have sought a writ of certiorari from the North Carolina Court of Appeals at that time, but did not. Therefore, his time under AEDPA began to run again, at the latest, within thirty days of the denial of his motion for appropriate relief. See McConnell v. Beck, 427 F. Supp. 2d 578, 582 (M.D.N.C. 2006) (time to seek review of denial of motion for appropriate relief undefined under North Carolina law, but would not be more than thirty days absent unusual circumstances); Rhue v. Carroll, No. 5:05-HC-592-BO (E.D.N.C. Aug. 28, 2006) (unpublished) (year begins running again immediately upon denial of motion for appropriate relief if no petition for certiorari is filed because nothing is in place to continue the tolling). Petitioner's time to file in this Court then expired in late February of 2008 without his having filed a petition in this Court or made any further filing in the state courts which would toll the running of the limitation period.

Petitioner did later file a second motion for appropriate relief in the state courts. However, he did not file that motion until July 13, 2009, or more than a year and a half after his time

to file in this Court had already expired. Attempts at collateral relief filed after the one-year filing period has already expired do not restart or revive the time to file. Minter v. Beck, 230 F.3d 663 (4th Cir. 2000).

Petitioner does not really contest the time calculations set out above. Instead, he argues that his Petition should be counted as timely filed because his medical condition prevented him from making a timely filing. The Petition states that Petitioner has a "cyst growing on his brain and has had one brain surgery done were [sic] shunts were placed into the brain to drain the intracranial cyst befor[e] he was incarcerated." (Docket Entry 2 at 14.) The Petition claims that the cyst is growing, threatens Petitioner's life, and "shuts down different functions of the brain" causing Petitioner to be "in a child like state with seizures, headaches, tremors and synopal [sic] episodes." (Id.) It contends that this condition left Petitioner "unable to file any Motion to attack his post-conviction remedies because he is incompeten [sic] to understand his rights." (Id.) The Petition adds that it is being filed on Petitioner's behalf by an unidentified "Pro se Friend of the court." (Id.)[2]

Petitioner's argument appears to raise the issue of equitable tolling. The Supreme Court has determined that the one-year limitation period under § 2241(d)(1)(A) is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2562 (2010).

---

[2]It appears that Petitioner has signed all relevant documents in this case. Therefore, the Court will treat the case as one filed and pursued by Petitioner, absent any contrary information from Petitioner.

Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). That condition might arise where a prisoner is actively misled or otherwise prevented in some extraordinary way from exercising his rights. Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). On the other hand, unfamiliarity with the legal process, lack of representation, and illiteracy do not constitute grounds for equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999). Waiting years to raise claims in state court and months to raise them in federal court shows lack of due diligence. Pace, 544 U.S. at 418. Finally, in order to show diligence, the prisoner must show diligence not merely at the federal level, but throughout the entire post-conviction process in order to have equitable tolling available to him. Coleman, 184 F.3d at 402.

Here, Petitioner argues that his mental condition, created by a cyst on his brain, kept him from pursuing his case in a timely manner. Courts have held that mental incompetency can provide grounds for granting equitable tolling; however, a petitioner's mental illness must not have merely lessened his ability to file or made filing difficult, but must have actually prevented him from understanding his legal rights and acting on them. Rhodes v. Senkowski, 82 F. Supp. 2d 160, 168-70 (S.D.N.Y. 2000) (collecting

cases and deducing standard). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity," such as where a petitioner is institutionalized or adjudged mentally incompetent. United States v. Sosa, 364 F.3d 507, 513 (4th Cir. 2004). Simply having a mental illness and taking medications are not sufficient. Id. Nor will conclusory allegations satisfy a petitioner's burden. Rhodes, 82 F. Supp. 2d at 172.

Petitioner's showing of mental incapacity, whether from his cyst or otherwise, falls far short of entitling him to equitable tolling. All of the evidence in the record which addresses Petitioner's mental state was collected at, or just prior to, his plea of guilty. Petitioner has presented nothing beyond the conclusory statements in his Petition to show that he suffered from any incapacity during the time between his guilty plea and the filing of his Petition.

The evidence in the record actually tends to refute Petitioner's claims of an incapacitating mental problem. Petitioner was sent for a mental evaluation prior to pleading guilty. That evaluation resulted in a report which is presented in scattered form in the attachments to the Petition and is included in its entirety in the state courts' records submitted by Respondent. (Docket Entry 6, Ex. 4.) The report did note that, in the past, Petitioner had been diagnosed with an intracranial cyst which was treated with a shunt and that he had a possible past history of a seizure disorder. (Id. at 5, 7.) However, during the

mental evaluations prior to his guilty plea, testing showed that Petitioner was engaging in "an attempt to feign or exaggerate memory deficits" and that he appeared to have seizures which the doctors concluded "were not reflective of genuine seizures." (Id. at 6.) The evaluator concluded that Petitioner was presenting himself as too mentally ill to proceed to trial, but that he was, in reality, "intentionally exaggerating the problems." (Id. at 8.) Petitioner was determined to have "feigned" seizures, falsely reported hallucinations, and falsely claimed "levels of mental impairment that significantly exceeded those encountered in even brain damaged individuals." (Id.) As a result, he received a diagnosis of "Malingering." (Id.) The evaluation also determined that Petitioner likely had "a personality disorder at some level," but the evaluators reported insufficient information to make a diagnosis. (Id.) The examiners ultimately concluded that Petitioner was "capable of proceeding to trial" and "capable of working with his attorney in the preparation of his defense and of conforming his behavior to the standards of the courtroom setting if he so [chose]." (Id.)

In no way does this report support Petitioner's claims of mental incapacity. In fact, it paints him as a person who fakes mental illness in order to achieve a tactical legal advantage. The fact that Petitioner filed two motions for appropriate relief and one certiorari petition following his guilty plea also suggests that he had the capacity to file a Petition in this Court, but simply did not do so. See, e.g., Robison v. Hinkle, 610 F. Supp.

2d 533, 540 (E.D. Va) ("[W]here a petitioner has filed other pleadings during the alleged period of incompetency, courts are often unwilling to find equitable tolling appropriate."), appeal dismissed, 357 Fed. Appx. 517 (4th Cir. 2009). In the end, Petitioner has presented no evidence that he was ever mentally incapacitated and certainly has not shown that he suffered from the "profound mental incapacity" required to entitle him to equitable tolling. All record evidence is to the contrary. The Court should not grant any equitable tolling and should dismiss his Petition as beyond the one-year limit set by § 2241(d)(1)(A).

As a final matter, because this case should not proceed, counsel is not needed.

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Appoint Counsel (Docket Entry 9) is **DENIED.**

**IT IS RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be **GRANTED**, that the Petition (Docket Entry 2) be **DISMISSED**, and that Judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

March 23, 2011